Christine OAKES, by Calvin S. Oakes, her next friend, and Calvin S. Oakes,

Plaintiff,

v.

Frank J. GILDAY, M.D., Defendant.

Superior Court of Delaware, New Castle.

Submitted Jan. 5, 1976.

Decided Jan. 12, 1976.

John M. Bader and John S. Grady, of Bader, Dorsey & Kreshtool, Wilmington, for plaintiff.

Rodney M. Layton and Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendant.

TAYLOR, Judge.

Plaintiff seeks damages for injury to an eye, which plaintiff contends resulted from improper treatment by defendant. At issue at this stage is whether the matter set forth in an amendment to the complaint filed September 17, 1975 is barred by the statute of limitations. The original complaint was filed June 16, 1971. It alleged that defendant prescribed Decadron for plaintiff on May 19, 1969, June 17, 1969 and September 4, 1969, and that because of the failure of defendant to warn plaintiff of the propensity of that medication to cause traumatic glaucoma, the failure to use proper precautions in treating plaintiff with this medication and the failure to check occular pressure constantly, which failures are alleged to constitute negligence on the part of defendant, plaintiff developed traumatic glaucoma. The proposed amendment would add a paragraph, alleging that "[t]he administration of Decadron as aforesaid pursuant to defendant's prescription was without the informed consent of plaintiffs."

The parties are in agreement that the applicable statute of limitations is 10 Del. C.[1] § 8119, which requires that suit be filed within two years after the injuries were sustained.

---

1. Reference is to the Revised 1974 edition.

I

The first question is whether this allegation is barred even if it relates back to the filing of the original complaint. According to the complaint, the treatment commenced May 19, 1969, more than two years before suit was filed.

Defendant views the lack of informed consent as a single occurrence or event arising solely at the commencement of treatment. It is said that one who proceeds without having obtained the informed consent of the patient commits an assault or battery upon the patient. 1 Louisell & Williams, *Medical Malpractice* § 809; Vol. 2 ibid § 22.08. The passage of time has dulled the strictness of the assault and battery rationale and the trend has been to apply the tests of ordinary negligence. *Ibid.*

■ It is the performance of a procedure upon a patient or conducting a course of treatment of a patient without having obtained the requisite consent which is actionable. The medical procedure may be a single act or occurrence, such as a surgical operation, or it may be a repetitive or continuing course of treatment extending over a period of time.

According to the complaint, the challenged professional conduct involved prescriptions given on three separate occasions, two of which occurred less than two years before the complaint was filed. Each contemplated repeated usage of the medication. This, therefore, did not involve a single impact upon plaintiff's physique. Here, the treatment involved either a series of impacts upon plaintiff's physique or a continuing impact. If it is in the former category, those impacts which have occurred less than two years before suit are not barred if the amendment relates back to the date of the original complaint. If it is a continuing impact, the statute did not begin to run until the termination of the impact, which is within the two-year period before suit. From the

limited facts presented, it appears that the harm arose not from the initial usage of the medication, but rather from its continuing or repeated usage. Hence, it must be inferred, at least for purposes of this motion, that if the more recent dosages had not occurred, the damage might not have occurred.

■ Recognizing that it is the invasion of the physical being without proper consent which is the basis of this charge, the violative action did not end at the time of the initial arrangement between plaintiff and the physician or upon the commencement of the treatment. Where continuing or repeated treatments are contemplated, there is repetitive or continuing invasion of one's person. Here, it appears that the treatments had the cumulative effect causing the condition in plaintiff's eye. Particular treatments are not traceable to a particular phase or degree of the condition. The general rule in tort law is that in the case of a continuing tort and injury whose damages cannot be determined until the cessation of the wrong, the statute of limitations begins to run no earlier than the last date of the wrong. 54 *C.J.S. Limitations of Actions* § 169, p. 128. The same rule applies in the case of a claim involving medical treatment. 1 Louisell v. Williams, *Medical Malpractice* § 13.06; 80 *A.L.R.2d* 380–3; cf. 11 A.L.R.2d 289–5; 54 *C.J.S. Limitations of Actions* § 174, p. 143.

■ Defendant's argument that plaintiff made a choice before commencement of the course of treatments and that it was at that point in time when defendant breached his duty to warn ignores the fact that where a succession of treatment is involved, each submission to treatment by the patient and each treatment by the physician without proper consent may be a further breach of defendant's breach of duty to plaintiff.

10 Del.C. § 8119 commences the statutory period "from the date . . . such alleged injuries were sustained . . .". The injury might have occurred during

the course of the treatment, at the conclusion of the treatment or subsequent to the treatment. Since this case involves physical injury, it is clear that in view of the incremental effect of the medication, the injury did not occur immediately upon the commencement of treatment. At what stage of treatment it occurred is not shown by the record. Of the more than three-month span of treatment, less than one month of treatment occurred more than two years before suit was filed.

Upon this record, it cannot be said that the injury from the continuing treatment or chain of treatments occurred during the first month of treatment.

■ A further obstacle to the contention that this charge is barred by the statute of limitations is the holding in this State that in certain types of claims the statute does not run from the date of the wrongful act or omission, but rather from the date the injury was discovered or should have been discovered. *Layton v. Allen*, Del.Supr., 246 A.2d 794 (1968). This rule applies when an inherently unknowable injury has been suffered by one who is blamelessly ignorant of the effect of the wrongful act and the harmful effect of the act develops gradually over a period of time. *Collins v. Wilmington Medical Center, Inc.*, Del.Supr., 319 A.2d 107 (1974); affirming *Collins v. Wilmington Medical Center, Inc.*, Del.Super., 311 A.2d 885 (1973).

■ The test applied by *Layton* involves an analysis of the nature of the resulting injury. This inquiry involves the nature of the injury and only indirectly involves the nature of the wrongdoing. Here, it appears that the type of injury arose because of the peculiar characteristics of the medication and, hence, as to plaintiff, this was "an inherently unknowable injury." From the facts presented, it appears that plaintiff was ignorant of the propensities of the medication and also that this ignorance was blameless in that it did not result from fault or inattention on the part

of plaintiff. Finally, it appears that the harmful effect developed gradually over a period of time. This appears to be an inherent characteristic of this medication when used continuously over a prolonged period. Hence, if the evidence supports the facts recited above, this case falls within *Layton* and the statute must run from the date plaintiff discovered or should have discovered the injury. It is not contended that that date antedated the statutory two-year period before the complaint was filed.

### II

■ The next question is whether this amendment is entitled to relate back to the date of filing of the original complaint for purposes of applying the statute of limitations. In this instance, no new facts are added in the amendment and the physical relationship between the parties and results of the relationship are not modified. What is added is a second legal ground or concept upon which to found the same claim. It appears that common to both grounds is the claimed improper usage of medicine.

Civil Rule 15(c) provides

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The test, therefore, is whether the claim asserted in the amendment "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading".

3 *Moore's Federal Practice* § 15.15[3], p. 1027, states that the objective of the rule is to broaden "the meaning of the concept of 'cause of action,' shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim." 6 *Wright & Miller,*

*Federal Practice & Procedure* § 1497, relied upon by defendant, states (at pp. 500–1):

> "The fact that an amendment changes the legal theory which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.
>
> Thus, an amendment may set forth a different statute as the basis of the claim, or change a common law claim to a statutory claim or vice-versa, or shift from a contract theory to a tort theory, or delete a negligence count and add or substitute a claim based on warranty, or change an allegation of negligence in manufacture to continuing negligence in advertising."

A strikingly similar statement appears in 3 *Moore's Federal Practice* § 15.15[3], at pp. 1027–30.

Defendant emphasizes the difference in proof required in connection with the negligence claim from that required in the lack of informed consent claim. While it is true that different testimony may be required as to each claim, in general, both appear to require a showing of the applicable standard of the medical community in that locality or similar localities. *DiFilippo v. Preston*, Del.Supr., 3 Storey 539, 173 A. 2d 333 (1961); *Peters v. Gelb*, Del.Super., 303 A.2d 685 (1973). It is difficult to conclude that a professional who is familiar with the standard of treatment prevailing in a community would not also be familiar with the standard of communication and warning from physician to patient prevailing in the community. Moreover, the motion to amend was granted September 26, 1975, almost four months before the scheduled trial date. Finally, there has been no contention that the passage of time prior to assertion of the claim set forth in the amendment has resulted in prejudice to defendant either by way of lost evidence or otherwise. Cf. *Dugan v. Wilmington Medical Center, Inc.*, Del.Super., 255 C.A. 1972 (Opinion April 1, 1974).

I conclude that the amendment is entitled to the benefit of the date of filing of the original complaint. *Wagner v. Olmedo*, Del.Super., 323 A.2d 603 (1974).

In ruling upon this motion, the Court has not considered the standard of proof required for this claim, the extent of the duty of defendant with respect to warning of the risks attending the use of the medication and in particular its prolonged use in contrast to sporadic use, (see *Shetter v. Rochelle*, 2 Ariz.App. 358, 409 P.2d 74 (1965)) or the action or withholding of action which plaintiff would have taken if warning had been given. (ibid).

The motion to dismiss based upon the affirmative defense of statute of limitations is denied.

It is so ordered.