IN THE SUPREME COURT OF THE STATE OF DELAWARE

MEGAN CARROLL, §
§ No. 259, 2024
Plaintiff Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ C.A. No: N22C-08-459
FOREWINDS GARRISONS LAKE §
LLC, and FOREWINDS §
HOSPITALITY LLC, §
§
Defendants Below, §
Appellees. §

Submitted: January 8, 2025
Decided: March 19, 2025

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW** Justices.

## <u>ORDER</u>

This 19th day of March, 2025, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Megan Carroll sued Forewinds Garrisons Lake, LLC and Forewinds Hospitality, LLC (collectively, "Forewinds") for negligence after a stolen golf cart that Carroll was riding in tipped over and landed on her leg. The cart belonged to Garrisons Lake Golf Club, a public golf course managed by Forewinds. Carroll's suit claimed that Forewinds negligently failed to secure its golf cart against theft by neighboring juveniles thereby creating a risk of harm to others. Forewinds moved for summary judgment under Superior Court Civil Rule 56, arguing that it was not

liable for Carroll's injuries because they were not reasonably foreseeable and thus Forewinds owed no duty of care to Carroll. The Superior Court granted Forewinds's motion, and Carroll now appeals. She contends that the court erred in granting summary judgment because genuine issues of material fact remain—the timing and manner of the theft of the golf cart that injured Carroll. Because the timing and manner of the theft are immaterial to the issue of liability, we affirm the Superior Court's grant of summary judgment.

(2) Garrisons Lake Golf Club ("Garrisons Lake") is a public golf course managed by Forewinds. Garrisons Lake is nestled among several residential neighborhoods near Smyrna, with houses sitting only 20 to 30 feet from Garrisons Lake's property. On June 17, 2021, two teenagers attempted to steal a golf cart. Before this incident, Garrisons Lake had never experienced a theft—or even an attempted theft—of a golf cart. On June 28, 2021, Garrisons Lake reported to police that two of its carts had been stolen the night before from its storage yard.

(3) On June 29, 2021, a group of teenagers—including Megan Carroll, Christian Bennett, and Brady Iddon—were at a house near Garrisons Lake.[1] Some of the teenagers were swimming in a pool while others took turns driving around in a golf cart that Iddon had brought to the house. The cart ("Cart #36") bore the

---

[1] At the time of the accident, Megan Carroll was approximately 16–17 years old. *See* App. to Opening Br. at A12. Christian Bennett was 15 years old. *Id.* at A136. And Brady Iddon was approximately 16 years old. *Id.* at A458.

number "36" on its side. Unbeknownst to the other teenagers, Iddon had stolen Cart #36 from Garrisons Lake.

(4) When she tired of swimming, Carroll decided that she wanted to ride in Cart #36 and asked one of the other teenagers to drive. Bennett agreed to drive, and the two set off for a ride around the neighborhood. Not long into their ride, Cart #36 tipped over and landed on Carroll's leg. An ambulance was called to tend to Carroll, who suffered "multiple open fractures to her metatarsal bones in her right foot."[2]

(5) Several weeks later, Iddon appeared at Garrisons Lake and admitted to stealing multiple golf carts. Garrisons Lake's general manager called the police to inform them of Iddon's desire to confess, and the police arranged for Iddon and his mother to come to Smyrna Police Department the next day for an interview.

(6) During the interview, Iddon told police that he had taken a range-picking cart (the "Picker") from Garrisons Lake "during the day" while "it was sitting next to the driving range" and "unsecured."[3] The police then asked Iddon about another golf cart he had stolen. At first, Iddon claimed that he "did not know anything about" another stolen cart.[4] After police showed Iddon a photograph of him riding a different golf cart also from Garrisons Lake, Iddon admitted that he had stolen that cart, too. Iddon "stated that he had stolen another golf cart during the

---

[2] Opening Br. at 6 (quoting App. to Opening Br. at A15).
[3] App. to Opening Br. at A84.
[4] *Id.* at A85.

3

day" while "the fence to the maintenance yard was open."[5] Iddon also admitted that "he used the same key from th[at] golf cart to operate and steal the [P]icker."[6] Iddon did not give police a timeline of the thefts, nor did he admit to stealing Cart #36 specifically.

(7)    A year later, Carroll sued Forewinds under a theory of negligence for the injuries she sustained from the golf cart accident.[7]

(8)    During discovery—nearly two-and-a-half years after the accident—Carroll deposed Iddon. Carroll's counsel asked Iddon about the golf cart thefts. Iddon admitted to stealing multiple carts from Garrisons Lake, including the Picker, Cart #36, and another golf cart.[8] But Iddon had difficulty remembering exactly when he had stolen the various carts. Early in the deposition, Iddon stated that he "can't fully remember" when he stole each of the carts.[9] He also admitted to stealing one cart during the day while it was out in the open and another at night while it was locked up in a fenced-in area. Iddon stated that he did not remember the date on

---

[5] *Id.*

[6] *Id.*

[7] Carroll had also sued Christian Bennett and Craig Bennett (Christian Bennett's father) for negligence for the injuries she sustained from the golf cart accident. In the same action, Carroll sued USAA General Insurance, Craig Bennett's homeowners insurance provider, for breach of contract for failing to provide payments for her medical expenses related to the golf cart accident. *See id.* at A12–25. In July 2023, Carroll dismissed her claims against Christian Bennett, Craig Bennett, and USAA General Insurance as a part of an out-of-court settlement agreement, leaving Forewinds as the only remaining defendants. *See* Opening Br. at 2; App. to Opening Br. at A5.

[8] App. to Opening Br. at A454.

[9] *Id.* A450.

4

which he stole Cart #36. Nor is it clear from Iddon's deposition testimony whether he stole Cart #36 during the day or at night.[10]

(9) On the day following Iddon's deposition, Forewinds moved for summary judgment under Superior Court Civil Rule 56. Relying on police reports based on information Forewinds provided following the golf cart thefts and the deposition testimony of its employees, Forewinds claimed that Iddon stole Cart #36 sometime between 9 p.m. on June 27 and 4 a.m. on June 28. According to Forewinds, Iddon scaled the fence where the carts were stored at night and stole Cart #36 by ramming it into the locked metal gate until the gate broke open. Forewinds claimed that the keys to the golf carts were locked up at night and that Iddon must have obtained a key "at a different time in a different manner" to steal Cart #36.[11]

(10) In Carroll's opposition to Forewinds's motion for summary judgment, she argued that "there [were] many issues of material fact remaining," namely the timing and manner of Iddon's theft of Cart #36.[12] Relying on Iddon's deposition testimony, Carroll claimed that Forewinds's chronology of the theft was wrong and that Iddon had actually stolen Cart #36 during the day while the cart was left unsupervised with the keys in the ignition, sometime between June 18 and June 26, rather than at night while it was locked up as Forewinds claimed. The timing and

---

[10] *See id.* at A448–54.
[11] Answering Br. at 4 (citing App. to Opening Br. at A412).
[12] App. to Opening Br. at A38.

manner of the theft, Carroll argued, was material because "[v]ehicle owners have a duty to third parties to secure their property against theft" and that such "duty is predicated on the foreseeability that stolen vehicles will be involved in accidents."[13] According to Carroll, if Iddon had stolen Cart #36 during the day when it was out in the open, then Forewinds breached this duty by failing to properly store its golf carts so that teenagers, like Iddon, could not steal them and cause harm to others. In response to Carroll's argument, Forewinds claimed that regardless of the timing and manner of Iddon's theft of Cart #36, "[Forewinds] neither owed nor breached any duty to [Carroll]."[14]

(11) The Superior Court granted summary judgment in favor of Forewinds. The Superior Court found that vehicle owners do not have a general duty to secure their vehicles from theft unless there are "exceptional circumstances" where "the risk is foreseeable."[15] The court found that "'[f]oreseeable thieves' may create a duty while 'unforeseeable thieves' do not."[16] The court reasoned that, because Garrisons Lake had not experienced an attempted golf cart theft until June 17, 2021, Iddon was an unforeseeable thief, and, therefore, Forewinds had no duty to prevent his theft of Cart #36.

---

[13] *Id.* at A35 (quoting *Robbins v. William H. Porter, Inc.*, 2006 WL 1313858, at *1 (Del. Super. Ct. Apr. 19, 2006)).

[14] *Id.* at A42.

[15] *Carroll v. Bennett*, 2024 WL 2830633, at *2 (Del. Super. Ct. June 4, 2024) [hereinafter "Opinion"].

[16] *Id.*

(12)    In reaching its decision, the Superior Court accepted Forewinds's chronology as true.[17]  The court acknowledged, however, that even under Carroll's chronology, Forewinds would still not be liable because Garrisons Lake "had no prior experience with a theft at all and certainly no notice that would impose a duty to protect from theft."[18]  In sum, the Superior Court found that "the alleged factual discrepancy" as to Iddon's theft of Cart #36 was "not 'material' within the meaning" of Superior Court Civil Rule 56 because "[u]nder either scenario, [Carroll] cannot show notice to [Forewinds] such that harm to members of the public from torts caused by golf cart thieves was foreseeable."[19]

(13)    We review the Superior Court's grant of summary judgment *de novo*.[20] When considering a motion for summary judgment, we "examine the factual record and make reasonable inferences therefrom in the light most favorable to the nonmoving party to determine whether there is any dispute of material fact."[21]  When moving for summary judgment on a claim alleging negligence, the moving party bears the "burden of producing evidence of necessary certitude demonstrating that there is no genuine issue of material fact relating to the question of negligence and

---

[17] *See id.* at *1.  In its presentation of the facts, the court wrote that "on the night of June 27–28, two carts were stolen. . . .  Cart No. 36 was stored in a locked, chained and fenced pen.  All keys for the carts were locked separately in the pro shop . . . ."  This aligns with Forewinds's proposed chronology of the theft.  *See supra* ¶ 9.

[18] Opinion at *3.

[19] *Id.*

[20] *See Riad v. Brandywine Valley SPCA, Inc.*, 319 A.3d 878, 883 (Del. 2024).

[21] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).

that the proven facts preclude the conclusion of negligence on [the defendant's] part."[22] If the moving party meets this burden, then "the burden shifts to the non-moving party to prove the existence of a genuine issue of material fact."[23] It is not enough for the nonmoving party "merely to assert the existence of such a disputed issue of fact."[24] Put differently, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts."[25]

(14) On appeal, Carroll argues that the trial court erred in granting summary judgment because the timing and manner of Iddon's theft of Cart #36 are disputed material facts. As mentioned above, Carroll claims that if Iddon had stolen Cart #36 during the day while it was unsecured with the keys in the ignition, then Forewinds could be liable for her injuries because it was foreseeable that a teenager like Iddon might steal a golf cart. Thus, according to Carroll the timing and manner of the theft is material to the issue of liability. We disagree.

(15) An essential element of a negligence claim is the existence of a legal duty owed by the defendant to the plaintiff.[26] Traditionally, courts have held that an

---

[22] *GMG Ins. Agency v. Margolis Edelstein*, 328 A.3d 302, 309 (Del. 2024) (quoting *Hazel v. Del. Supermarkets, Inc.*, 953 A.2d 705, 709 (Del. 2008)).

[23] *Droz v. Hennessy Indus., LLC*, 275 A.3d 257, 261 (Del. 2022) (citing *Moore v. Sizemore*, 405 A.2d 679, 680–81 (Del. 1979)).

[24] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[25] *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[26] *See GMG Ins. Agency*, 328 A.3d at 310.

owner of a vehicle owes no duty to a victim injured by a thief.[27] A duty may arise however, "under circumstances where the [vehicle owner] should have reasonably anticipated that its conduct would create an unreasonably enhanced danger to [some]one in the position of the injured plaintiff."[28] Accordingly, the plaintiff must demonstrate "unusual circumstances" surrounding the theft showing that harm to the plaintiff resulting from the theft was foreseeable by the owner of the stolen vehicle.

(16) As the Superior Court noted, Carroll has not alleged any "unusual circumstances" beyond an isolated attempted theft on June 17 that would give rise to a duty owed by Forewinds to prevent the theft of its golf carts. Even if we were to accept Carroll's proposed chronology as true—meaning that Cart #36 was stolen by Iddon during the day between June 18 and June 26—there are no unusual circumstances that would have caused Forewinds reasonably to anticipate that Iddon would steal a cart. The fact that two teenagers attempted to steal a cart on June 17 was not sufficient to put Forewinds on "notice that would impose a duty to protect from theft."[29]

---

[27] *Vadala v. Henkels & McCoy, Inc.*, 397 A.2d 1381, 1383 (Del. Super. Ct. 1979) ("The traditional approach, absent unusual circumstances, has been to deny relief to the injured plaintiff either by holding that the vehicle owner owes no duty to a victim injured by a thief, or that vehicle theft constitutes an unforeseeable intervening criminal act which breaks the chain of causation between the negligence of the vehicle owner and the injuries of the plaintiff."). *See also Jewell v. Absher*, 2002 WL 970464, at *2–3 (Del. Super. Ct. Apr. 18, 2002).
[28] *Vadala.*, 397 A.2d at 1383.
[29] Opinion at *3.

(17) To be clear, accepting one chronology over the other is not dispositive to the outcome of this case. Under either Carroll's or Forewinds's chronology, Forewinds did not owe a duty to Carroll and therefore cannot be liable for negligence. Consequently, the Superior Court correctly granted Forewinds's motion for summary judgment.

(18) In her Reply Brief, Carroll claims that Forewinds had a "legal duty to exercise reasonable care to eliminate the dangers of an artificial condition or otherwise protect children" under the "attractive nuisance doctrine."[30] Carroll did not make an attractive-nuisance argument in her Opening Brief. Therefore, Carroll has waived her argument that the attractive nuisance doctrine is applicable.[31] In her Reply Brief, Carroll also argues that Forewinds, "as owners of Cart #36, caused a minor to drive Cart #36 upon a highway and are jointly and severally liable for the negligence of the minor, under 21 *Del. C.* § 6105."[32] Carroll did not raise this argument in her Opening Brief. Therefore, Carroll's argument under 21 *Del. C.* § 6105 is also waived.[33]

---

[30] Reply Br. at 1.
[31] *See* Supr. Ct. R. 14(b)(vi)(3).
[32] Reply Br. at 12.
[33] *See* Supr. Ct. R. 14(b)(vi)(3).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice